UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MELISSA CAPRARO                    :
                                   :
        v.                         :       C.A. No. 13-175L
                                   :
CAROLYN COLVIN                     :
Commissioner of the Social Security :
Administration                     :


**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge


   This matter is before the Court for judicial review of a final decision of the Commissioner
of the Social Security Administration ("Commissioner") denying Social Security Disability
Insurance ("SSDI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the
"Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on March 19, 2013 seeking to reverse the
decision of the Commissioner.  On November 4, 2013, Plaintiff filed a Motion to Reverse the
Decision of the Commissioner.  (Document No. 10).  On January 6, 2014, the Commissioner filed
a Motion for Order Affirming the Decision of the Commissioner.  (Document No. 13).

   This matter has been referred to me for preliminary review, findings and recommended
disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'
submissions and independent research, I find that there is substantial evidence in this record to
support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning
of the Act.  Consequently, I recommend that the Commissioner's Motion for Order Affirming the

Decision of the Commissioner (Document No. 13) be GRANTED and that Plaintiff's Motion to

Reverse the Decision of the Commissioner (Document No. 10) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for SSDI and DIB on October 27, 2009 alleging disability since

April 28, 2009.  (Tr. 159-169).  The applications were denied initially on January 25, 2010 (Tr. 81-

84) and on reconsideration on June 4, 2010.  (Tr. 86-91).  Plaintiff requested an Administrative

hearing.  (Tr. 92).  On November 2, 2011, a hearing was held before Administrative Law Judge

Martha Bower (the "ALJ") at which time Plaintiff, represented by counsel, a vocational expert

("VE") and a medical expert ("ME") appeared and testified.  (Tr. 34-76).  The ALJ issued an

unfavorable decision to Plaintiff on November 15, 2011.  (Tr. 16-28).  The Appeals Council denied

Plaintiff's Request for Review on January 14, 2013, therefore the ALJ's decision became final.  (Tr.

1-3).  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in her assessment of impairments at Step 2 and did not

give adequate weight to the treating source opinions.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's Step 2 decision is

supported by the record, and that Plaintiff's reliance on the treating source opinions is misplaced

since neither qualifies as an acceptable medical source.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

## B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1ˢᵗ Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8ᵗʰ Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1ˢᵗ Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  <u>Seavey</u>, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  <u>Deblois v. Sec'y of Health and Human Servs.</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  <u>Id.</u>

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  <u>Seavey</u>, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.  Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1ˢᵗ Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1ˢᵗ Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11ᵗʰ Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11ᵗʰ Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11ᵗʰ Cir. 1983)).

## V.   APPLICATION AND ANALYSIS

Plaintiff was thirty-three years old on the date of the ALJ's decision.  (Tr. 159).  Plaintiff earned her GED in 2009 and also took job training classes for work as a medical assistant that same year.  (Tr. 202).  Plaintiff worked in the past as a cashier, sales associate, retail supervisor, laborer, payroll cashier, telemarketer, overnight receiver and waitress.  (Tr. 197, 224, 244).  Plaintiff alleges disability due to affective and anxiety disorder.  (Document No. 10-1 at p. 1).

During 2008, Plaintiff was treated for back pain and anxiety/depression.  (Tr. 369-381).  In January 2009, she complained of back pain when moving her residence.  (Tr. 367).  At that time, it was noted that she had been doing well with regard to anxiety and depression.  (Tr. 368).  In April 2009, Plaintiff was two-months' pregnant.  (Tr. 357).  The only current medical problems noted at that time were nausea and vomiting.  Id.  In May 2009, she told Dr. Caron that she was currently working full time and doing an internship for school; she was unable to get rest and felt "very tired."  (Tr. 355).  She was given medical leave due to her vomiting, with the possibility of working and going to school for a total of forty hours per week, with frequent breaks.  Id.  In July 2009, Plaintiff

said she was not working and had just finished her training and felt depressed.  (Tr. 347).  In August 2009, Plaintiff was initially seen at Gershon Psychological Associates by a social worker, who noted that she had an unstable relationship with the father of her unborn baby, who had hit her, and was now incarcerated, and subject to a "no contact" order.  (Tr. 408).  She denied suicidal or homicidal ideation and was pleasant, cooperative and well groomed, but appeared sad, anxious and tearful.  (Tr. 409).  Motor activity and speech were normal, and she was alert and oriented.  Id.  She was diagnosed as having had a depressive episode.  (Tr. 410).

In September 2009, Plaintiff was seen following a fainting episode.  (Tr. 280).  An echocardiogram and EKG at that time were normal; she was advised to increase her salt and fluid intake and wear compression stockings when anticipating prolonged periods of upright posture.  (Tr. 281).  In October 2009, she was seen in the emergency room after being punched in the stomach at a karaoke restaurant and was reassured that this had not harmed her unborn baby.  (Tr. 292-293).  Her son was born  by cesarean section in early December 2009.  (Tr. 502).  Later that month, she told Dr. Caron that she was having a difficult time at home, she cried all the time and her older son felt she was pushing him away; she was getting no help from friends or relatives or from the father of the baby.  (Tr. 504).  She was diagnosed with post-partum depression, and her Zoloft was increased.  (Tr. 505).

In January 2010, Plaintiff's medical records were reviewed by Dr. Slavit, a state agency psychologist.  (Tr. 393).  Dr. Slavit indicated that Plaintiff had not responded to either phone calls or a "call-in letter" regarding her availability to attend a consultative evaluation.  (Tr. 405).  Consequently, he concluded that there was insufficient evidence to establish the existence of a medically determinable mental impairment.  (Tr. 393, 405).  In March 2010, Dr. Hahn, another

reviewing psychologist, stated that Plaintiff continued to be unresponsive to contact attempts and likewise stated that there was insufficient evidence of a medically-determinable mental impairment. (Tr. 411, 423).  In June 2010, Dr. Hahn noted that, while Plaintiff had presented a report from a nurse therapist, there was still no medical evidence from acceptable medical sources which could be used to establish the existence of a medically-determinable mental impairment.  (Tr. 426).

Plaintiff was seen again at Gershon in January 2010, she said that her baby had been sick since birth and that her older boy was also sick.  (Tr. 407).  She complained of anxiety, decreased concentration and poor sleep.  Id.  In June 2010, she reported she was again pregnant.  (Tr. 500). In October 2010, Dr. Clairborne noted that she was a difficult management case due to compliance issues and a poor social situation.  (Tr. 480).  At this time, she had recently started using insulin for gestational diabetes.  (Tr. 483).  That same month, Plaintiff also saw Ms. O'Brien at Gershon and said her ten-month old son had three operations for pyloric stenosis, and her eldest son had to repeat the seventh grade.  (Tr. 532).  She was currently five and one-half months pregnant and was planning her wedding.  Id.

Plaintiff was in a car accident in December 2010; CT scans of the abdomen, pelvis and lumbar spine were all negative.  (Tr. 580).  In early January 2011, she told Ms. O'Brien that she felt anxious, depressed and hyper vigilant, and did not want to drive again.  (Tr. 531).

Plaintiff gave birth to her baby in January 2011.  She told Dr. Clairborne that her blood sugars were still elevated, even after having had the baby and that she was emotionally labile.  Id. In April 2011, she told Ms. O'Brien that she was still not driving due to anxiety and that she had been subjected to domestic violence.  (Tr. 530).  Ms. O'Brien referred her to Family Services to obtain additional support.  Id.  In May 2011, Plaintiff told Dr. Allen, her primary care physician, that

-13-

she was a homemaker and mother of three, and she was currently engaged.  (Tr. 583).  She said she

was on insulin for treatment of diabetes, but did not know the dosage or formulation.  (Tr. 583).

Plaintiff was also taking Zoloft and Klonopin for anxiety and depression, Motrin for back pain and

Zantac for GERD.  (Tr. 583-584).  Examination findings at this time were normal.  (Tr. 583).  In July

2011, she told Dr. Allen that she was once again pregnant.  (Tr. 585).  Examination findings were

again normal.  Id.

In May 2011, Ms. O'Brien, who reported she saw Plaintiff on seven occasions between

September 2008 and April 2011, completed a questionnaire indicating that Plaintiff had "moderately

severe" limitations in numerous functional areas: understanding, remembering and carrying out

instructions; responding appropriately to supervision; responding to customary work pressures; and

performing both varied and complex tasks.  (Tr. 526, 528-529).  In June 2011, Ms. Gagnon,

Plaintiff's new therapist, concluded that she had moderately severe functional limitations in

numerous areas.  (Tr. 547-548).  In October 2011, Ms. Gagnon rendered a similar opinion as to

Plaintiff's mental capacity for work activities.  (Tr. 621-622).

Plaintiff was initially evaluated by a social worker at Family Services in May 2011.  (Tr.

596-598).  At this time, she reported depression and anxiety due to difficulty dealing with two small

children, one of which had special medical issues, while her oldest son was having school

difficulties.  (Tr. 533).  She claimed she had a herniated disc and back pain, seizures (most recently

in 2009), high blood pressure (not medicated), troubles with breathing and sleeping and headaches.

(Tr. 536).  On mental status evaluation, she displayed low self-esteem, but had intact thought

processes, was fully oriented, and memory, judgment and insight were intact.  (Tr. 538-539).  She

was diagnosed with general anxiety disorder, post-traumatic stress disorder, and major

depression-moderate. (Tr. 539).  In June 2011, Ms. Gagnon, Plaintiff's nurse/therapist, concluded

that she had moderately severe functional limitations in numerous areas.  (Tr. 547-548).  In July

2011, Ms. Gagnon diagnosed a mood disorder-NOS, and a post-traumatic stress disorder (apparently

related to the car accident) and rated Plaintiff's GAF as 50 or serious symptoms. (Tr. 542-544).  She

was started on medication, and by July, Ms. Gagnon indicated that she was doing much better than

she had been at her initial two visits. (Tr. 595).  Plaintiff was calm with normal speech and said she

had been able to attend a family function.  Id.  Her pregnancy was proceeding normally, but her

sleep was disturbed due to her youngest child's needs.  Id.

In August 2011, she reported that she had recently had a miscarriage, and said she felt

overwhelmed by the responsibilities she had due to her children.  (Tr. 591).  In late September 2011,

she said she had not taken her medications, and was snapping and angry with everyone.  (Tr. 587).

Nonetheless, she was taking care of her children as well as she could.  Id.  Ms. Gagnon advised her

that her mood symptoms could be aggravated by her noncompliance, and she agreed to re-start her

medications.  Id.  She was seeing a therapist at home once per week.  Id.  On mental status

evaluation, Plaintiff was alert and fully oriented, showed an anxious mood with a constricted

(sometimes tearful) affect, displayed logical thought processes, was goal directed and future

oriented, focused on the well being of herself and her children.  Id.  In October 2011, Ms. Gagnon

rendered an opinion as to Plaintiff's mental capacity for work activities which was similar to the one

she had rendered back in June.  (Tr. 621-622).

###### A.      The ALJ's Decision

The ALJ found that Plaintiff's gestational diabetes, reflux and post-partum depression were

medically determinable impairments.  (Tr. 22).  However, at Step 2, the ALJ found insufficient

evidence to establish that Plaintiff's impairments (either singly or in combination) significantly limited her ability to perform basic work functions for twelve consecutive months.  Id.  Thus, she found that Plaintiff did not have any severe impairment(s) as defined in 20 C.F.R. §§ 404.1521 and 416.921, and denied Plaintiff's disability applications.  (Tr. 22-28).

**B.     Plaintiff Has Not Shown Any Error in the ALJ's Step 2 Determination**

The ALJ determined at Step 2 that Plaintiff was not entitled to disability benefits because her various impairments were not "severe" within the meaning of the applicable regulations.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  Social Security Ruling ("SSR") 85-28.  Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof.  See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009).  In her Step 2 analysis, the ALJ thoroughly discussed each of Plaintiff's impairments in the context of the record as a whole and concluded that there was insufficient medical evidence presented establishing that Plaintiff suffered a "severe" impairment. (Tr. 22-28).

An ALJ may properly base her Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities.

-16-

20 C.F.R. § 404.1520(a)(4)(ii), (c).  (emphasis added).  See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence.").  At Step 2, Plaintiff bore the burden of demonstrating that she had a "medically determinable" physical or mental impairment(s) that significantly limited her ability to do basic work activity at the relevant time.  Id. The ALJ found that Plaintiff did not meet that burden, and Plaintiff has shown no error in her finding.

Plaintiff alleges that the ALJ erred in finding that she did not have any severe, medically determinable impairment, and, relatedly, that the ALJ did not properly credit the opinions of her treating nurse and mental therapist, Ms. O'Brien and Ms. Gagnon.  The record, however, establishes that the ALJ properly relied on the opinion of Dr. Ruggiano, a psychologist who testified as a medical expert at the hearing, to find that the medical evidence was insufficient to establish the existence of any long-term medically determinable mental impairments (Tr. 26, 53), and this opinion was consistent with the prior opinions of two other reviewing psychologists, Dr. Slavit and Dr. Hahn.  (Tr. 393, 405, 411, 423, 426).

Plaintiff's reliance on the contrary opinions of Ms. O'Brien and Ms. Gagnon is misplaced. Under SSA's regulations, the impartial expert opinion of a testifying medical expert such as Dr. Ruggiano can constitute evidence since it is based upon a reading of the entirety of the relevant medical evidence. 20 C.F.R §§ 404.1527(e) and 416.927(e).  Even in cases where there are contrary opinions by treating sources, the ALJ may nonetheless assign greater weight to the opinion of a reviewing physician so long as he or she has an adequate basis for doing so.  Arroyo v. Sec'y of HHS, 932 F.2d 82, 89 (1st Cir. 1991).  However, as the ALJ accurately observed in this case, neither

Ms. O'Brien nor Ms. Gagnon was an acceptable medical source and, thus, neither could provide a medical opinion sufficient to establish the existence of a medically determinable impairment at Step 2. Couitt v. Astrue, No. 11-CV-124-PB, 2012 WL 1114295, *5 (D.N.H. April 3, 2012); 20 C.F.R. §§ 404.1513(a), 416.913(a). Further, because the record lacked any opinion from a qualified examining psychologist or psychiatrist, the Agency sought to arrange for Plaintiff to attend a consultative evaluation on multiple occasions, but Plaintiff never responded, and a consultative examination never took place. (Tr. 405, 411, 423, 426). Given Plaintiff's repeated lack of cooperation in developing the record, the ALJ was entitled to make a decision based on information that was available in this case. 20 C.F.R. §§ 404.1516 and 416.916. Since there was no competent medical evidence of record to support a Step 2 finding in favor of Plaintiff, the ALJ had no choice but to rule as she did.

Plaintiff also argues that her anxiety and depression should have been treated as severe impairments based on the findings of Ms. O'Brien and Ms. Gagnon, because they provided assessments that showed she had more than minimal limitations due to her symptoms. Plaintiff, however, fails to account for the well-established law that while "other medical sources" of this sort may be used to establish the impact of medical impairments that have already been established by acceptable sources of medical evidence, these other sources cannot meet her Step 2 burden of medically proving that such impairments actually exist, as discussed above.

The only mental impairment the ALJ found to exist was post-partum depression (Tr. 22) and, as noted above, the ALJ properly rejected the contrary opinions of Ms. O'Brien and Ms. Gagnon that Plaintiff had additional mental disorders. Although Plaintiff had exacerbations of anxiety and distress from time to time due to her difficult family circumstances and other problems (such as her

auto accident), the impact of this series of temporary conditions cannot be aggregated to meet the twelve-month durational requirements even if the record otherwise contained competent medical evidence to support a Step 2 finding in Plaintiff's favor.  Mitchell v. Astrue, C.A. No. 07-229ML, 2009 WL 50171, *9 (D.R.I. Jan. 7, 2009).

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 13) be GRANTED and that Plaintiff's Motion for an Order Reversing Decision of the Commissioner (Document No. 10) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 25, 2014